IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| KIMBERLY M. CAUSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| Walmart Inc. d/b/a | ) |
| SAM'S WHOLESALE CLUB, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## Complaint and Jury Demand

The Plaintiff, Kimberly Causey, by and through her attorney, Bonnie Travaglio Hunt of Hunt Law LLC, does hereby complain against the Defendant, Walmart Inc. d/b/a Sam's Wholesale Club (Hereinafter refered to as "Defendant") as follows:

## Nature of the Action

1. This is an action brought pursuant to the laws of the United States of America and the State of South Carolina.

2. This is an action brought pursuant to Civil Rights Act, Age Discrimination in Employment Act and the Americans with Disabilities Act of of the United States of America.

## Parties

3. The Plaintiff, Euriziel Everett, hereinafter referred to as the *Plaintiff*, is an individual who at all times relevant herein was a resident of the of the State of South Carolina.

1

4.  At all relevant times as presented herein the Plaintiff was an employee as defined by Federal and South Carolina Law.

5.  The Plaintiff is informed and believes, and based thereon alleges, that Defendant, Horry County Police Department, herein referred to as the *"Defendant"*, is, and at all times relevant herein was a governmental entity operating in the State of South Carolina. The Defendant is subject to the laws of this Court pursuant to State and Federal Law.

6.  At all relevant times as presented herein the Defendant was an employer as defined by Federal and State Law.

### Jurisdiction and Venue

7.  That Horry County is the proper venue for this action because this is the Circuit in which all or a substantial part of the events or omissions giving rise to the claims occurred.

### Procedural Prerequisites

8.  The Plaintiff properly filed a charge of discrimination based on Sex Discrimination, Disability Discrimination, Age Discrimination and Retaliation with the Equal Employment Opportunity Commission and the South Carolina Human Affairs Commission.  The Charge set forth the following:

*"I was harassed, disciplined, and denied promotions by my employer from on or about May 1, 2022, through the date of my discharge on or about June 8, 2023.*

*"I was hired by Respondent on or about April 9, 2016, and most recently employed as a front-end member service supervisor.  I am a fifty-seven-year-old woman.  My indirect supervisor, the club/store manager, was a younger male.  My direct supervisor, the member service manager, was a male believed to be under age forty.*

*"The fresh manager, believed to be under age forty, began harassing me in May 2022.  Fore example, she would frequently photograph my food or clothing and*

2

post it on the employee chat application threatening to place it in the breakdown with junk items. She also recorded me during meetings without my consent and would talk about me negatively to my co-workers.

"On or about July 23, 2022, I suffered an on-the-job slip-and-fall injury for which I was not at fault, after which my direct supervisor and the store manager began harassing me. On or about the date I was injured, I notified management and filed a workers' compensation claim. My direct supervisor was dismissive of my request to see a doctor, texting me that I should "soak it in Epsom salt." At the time of my injury, I was a member of the safety team. Following the accident, my supervisor stripped me of this position, removed my photo from the safety board, and excluded me from safety meetings going forward. On or about July 26, 2022, I saw a doctor who placed me on light duty limiting the amount of weight I could lift, pull, or push. I occasionally took time off for medical treatment and communicated any updates in my treatment plan with my case manager. I am still receiving treatment, including physical therapy, for my injuries.

"After I filed the workers' compensation claim and my doctor placed on restricted duty for my medical condition/disability, Respondent's management began writing me up and the store manager frequently placed me under investigation. On or about September 9, 2022, the fresh manager and my supervisor wrote me up for leaving a bank bag in the office on the desk. A male co-worker was not disciplined for the same conduct. On or about January 4, 2023, my supervisor held a meeting on my day off wherein he announced process changes, and that Respondent would be observing these front-end processes. He told me he would fill me in on the meeting, but never did, and soon thereafter, I was written up for non-adherence. I was also written up on or about January 19, 2023, when a cash equipment failure which I had reported and provided my supervisor with repair tickets delayed a bank deposit. A few months later when the male co-worker missed a bank deposit to which he admitted, he was not written up. On or about May 26, 2023, my supervisor reprimanded me for not writing up a subordinate for not following store policy. I followed his instructions to write her up and then, on or about June 8, 2023, I was written up for disrespecting the subordinate after questioning where she had been and instructing her to complete her training in a certain location.

"In October 2022, Respondent granted my request for Family Medical Leave Act twelve-month intermittent leave for my care of my mother, who was diagnosed with a medical condition/qualified disability. When I initially used my intermittent leave to care for my mother, my supervisor told other employees I was off vacationing/partying in New Orleans. On or about October 25, 2022, I filed a complaint about the ongoing harassment and discipline with Respondent's ethics department and the store manager alleging age and sex discrimination, as well as retaliation for the filing of my workers' compensation claim and for using medical leave.

3

*"Also, during my tenure, I began experiencing sexual harassment in the workplace. On or about November 14, 2022, my supervisor remarked to me and a co-worker that an associate's name sounded like the name of a male escort. On or about November 25, 2022, my supervisor referred to a woman as a "c\*\*\*." On several occasions, my male co-worker left a coffee mug with the message "just the tip" on it in the breakroom. I believe he purposefully placed it next to my items. I complained to my supervisor that it offended me, but he allowed it to continue. From about January 2023 through June 2023, a female subordinate of mine harassed me, calling me inappropriate names with sexual undertones, including "Pooky Bear." I filed several complaints with the ethics department complaining that she sexually harassed me. I received responses that my complaints were under investigation, but Respondent never followed up with me, and I do not believe my subordinate was ever counseled or disciplined for her behavior.*

*"On or about May 11, 2023, Respondent failed to consider me for promotion to a vacant front-end manager position for which I applied and was qualified. When I inquired as to when I would get the opportunity to interview for the position, my supervisor told me I would be interviewed upon the store manager's return from vacation. Once the store manager returned and no interview was arranged, I followed up twice with another manager (male), who claimed he knew nothing about an interview being scheduled for me. Respondent gave the position to a male who, upon information and belief, was not more qualified or experienced than me. Soon thereafter, a second front-end manager position opened for which I requested to apply and met the qualifications. Respondent did not consider my application and hired a male for the position. The male co-worker who permitted to leave the offensive coffee mug in the breakroom and not disciplined for making the late bank deposit was promoted over me.*

*"On or about June 7, 2023, I sent a letter to my workers' compensation case manager requesting medical attention for my work injury. The next day, Respondent presented me with the June 8, 2023, final write-up (referenced above) alleging I had disrespected the subordinate I wrote up and discharged me. This is the same subordinate who had sexually harassed me. I believe I was harassed, treated less favorably than my counterparts, disciplined, denied promotions, and discharged because I was an older female with a qualified disability, filed a workers' compensation claim, sought medical treatment for my work injury, took intermittent leave of the care of my mother who has a qualified disability, and because I complained about my treatment to management.*

*"Therefore, I believe I was discriminated against based on my qualified disability/medical condition, relationship with a disabled person, sex (female) and age (56 during relevant time period) and retaliated against for engaging in activities protected by the SC Human Affairs Law, as amended, the Americans with Disabilities Act of 1990, as amended, Title VII of the Civil Rights Act of 1964,*

*as amended, and the Age Discrimination in Employment Act of 1967, as amended."*

9.  The South Carolina Human Affairs issued a Right to Sue regarding the charge of discrimination on September 9, 2025.

10. The EEEOC issued its Right to Sue on September 29, 2025.

11. The Plaintiff hereby files her complaint within 90 days.

## **FACTS**

12. That the Plaintiff is a Woman over the age of 40.

13. The Plaintiff was hired by the Defendant in April of 2016.  The Plaintiff was a front-end supervisor at Sam's Club.  As a front-end supervisor, the Plaintiff was required to performing an Accounting in the Case Office which included:  prepare daily back deposits, research shorts & overages for each register and ancillary and report findings to Los Prevention both in store and through online to corporate accounting, and each of these actions was required to be performed.  The Plaintiff was an opening supervisor and therefore shared this responsibility with her co-opening manager.

14. That the Plaintiff performed her duties and responsibilities as required.  That the Plaintiff was considered an exemplary employee up and until she suffered an injury, filed for workers' compensation, filed for FMLA and filed discrimination complaints.

15. The Defendants, Walmart-Sam's Club, have several policies and procedures that are required to be filed by management and employees.  The Defendants have a disciplinary policy and EEO policies that set forth the steps required to be taken by any employee of the Defendant when taking actions against or for an employee.

16. The Open Door Policy set forth that it was "very important to maintain an environment of open and direct communication."  It further stated "We are pro-associate.  We strongly

believe in associate self-representation. We encourage associates to express ideas, suggestions, comments or concerns at any time through our Open Door Policy."

17. The Disciplinary Policy set forth that an individual could be terminated after having three "DA" actions. Disciplinary Actions only last twelve months in an employee's file.

18. The Defendants policies further clearly state that associates are required to be provided "Feedbacks" when an associate needs improvement or there are concerns with performance.

19. The Plaintiff was considered an exemplary employee. The Plaintiff received all positive feedbacks and coaching prior to her injury. Including receiving an award in 2016 for her performance.

20. The Plaintiff received compliments on her performance, including but not limited to her accounting skills and organization skills

21. In May of 2022, a new Club Manager was brought into the store, Timothy Scheriber.

22. Ashton Meade, a younger non-perceived disabled individual was the Plaintiff's manager the last year of her employment.

23. On July 23, 2022, the Plaintiff was injured on the job. The Plaintiff slipped and fell due to a malfunctioning ice machine that leaked water on the floor. The Plaintiff immediately reported the incident as required by the Defendants' policies and procedures.

24. The manager on duty at the time of the injury had the Plaintiff call workers' compensation prior to leaving the building and reporting the incident.

25. After the Plaintiff's injury she informed her manager that her knee was swollen and she thought it needed to be looked at. Meade's response was that she should wait 24 hours and soak in Epson salt.

6

26. In July of 2022, the Plaintiff made a formal request for vacation in December of 2022. In December the manager, Ashton Meade, denied the Plaintiff's request. The manager informed the Plaintiff that he could not provide vacation to a supervisor during the holiday. However, the manager granted vacation to a younger individual who held the same position as the Plaintiff. The Plaintiff had seniority over this individual. The Plaintiff was treated differently based on her age in violation of the law.

27. Ashton Meade had a history of treating younger individuals more favorably than then individuals over the age of fifty. Meade canceled the Plaintiff's discipline of a younger individual so that she could be promoted in violation of the policies of the Defendants. Meade specifically took this action so that an older individual would not be hired for the position.

28. On August 2, 2022, it was finally determined that the Plaintiff was permitted to seek medical treatment through Workers' Compensation.

29. On September 8, 2022, the Plaintiff performed her accounting and determined that there was an over $9,786.30 shortage in the cash office. The shortage was due to a cash recycler error. The Plaintiff reported this to Meade as is required. Meade failed and refused to handle the shortage.

30. On September 11, 2022, the ice machine was still malfunctioning and there was water on the floors where the Plaintiff had slipped and fallen.

31. On September 14, 2022, the Plaintiff sought medical treatment from the workers' compensation physician. The Plaintiff was instructed to attend physical therapy 2 to 3 times per week for six to eight weeks.

32. In October 2022, the Plaintiff was approved for intermittent FMLA to care for her 80-year-old mother. The Intermittent leave was for 3 to 7 days per week care approved through October 2023.

33. On October 3, 2022, Meade began slandering the Plaintiff by informing employees that the Plaintiff was not really on FMLA but was on vacation.

34. In October 2022, the Plaintiff was informed by the Club manager and Brandy Bruggeman that she was being investigated for a gift card transaction. The Plaintiff was forced to write a statement. The Plaintiff was informed if she did not write a statement she would be terminated. The Plaintiff complained that this action was harassment. Three days later the Plaintiff was informed that the investigation was concluded.

35. On October 10, 2022, the Plaintiff was called to the office by Meade where he intimidated her and scared her by stating she had made a racist remark. Meade proceeded to inform her that he was not writing her up for looking at a customer like the Plaintiff was a racist but for a cash bag being left on a desk in the office. On October 21, 2022, the Plaintiff requested another open door regarding this incident and the accusation that she looked at a customer with a racist face. The Plaintiff further reported this incident to the Home Office. The Plaintiff was concerned regarding the constant harassment and discrimination.

36. On October 14, 2022, the Plaintiff was required to file a response to an allegation that she had mistreated another employee.

37. When the Plaintiff returned from FMLA the harassment ramped up in retaliation for her filing of the workers' compensation action.

38. On October 21, 2022, the Plaintiff requested a open door with the Club Manager. The Club Manager denied her open-door request.

39. On October 23, 2022, the Plaintiff was required to go to Urgent Care due to pain in her knee. The physician gave the Plaintiff restrictions.

40. In 2022, a newly promoted front-end manager, Brandy Bruggeman (younger non-perceived disabled female) began harassing the Plaintiff. Bruggeman instituted a system of harassment and discipline against the Plaintiff in order to perpetrate a false termination. Bruggeman started several investigations for false reports against the Plaintiff in violation of the law. Bruggeman accused the Plaintiff of poor customer service and after an investigation it was determined to be unfounded.

41. When Bruggeman was promoted, she began to harass other older associates as well. Bruggeman constantly made comments regarding the Plaintiff in front of other associates harassing the Plaintiff, insinuating the Plaintiff was failing to properly perform her position and ostracizing the Plaintiff. Bruggeman's actions slandered the Plaintiff in front of her peers and affected the Plaintiff's overall work environment making it severe and pervasively hostile.

42. The Plaintiff was informed by another employee to beware of Bruggeman.

43. Bruggeman instituted six write ups and investigations into the Plaintiff over a twelve-month period to perpetrate her wrongful termination. On November 13, 2022, Bruggeman instituted a "Feedback" for the Plaintiff which contained extensive false information regarding an incident. A global investigation was conducted against the Plaintiff based on this false "Feedback" by Bruggeman. On November 14, 2022, the Plaintiff requested an Open door regarding the feedback. The Discipline was pretextual and determined to be inappropriate and was removed from the Plaintiff's file on December 12, 2022.

44. In December 2022, the store was ranked number 1. The Plaintiff was congratulated on her performance.

45. On January 7, 2023, the Plaintiff was disciplined for not having tills out on time. The Sam's Club Cash Recycler was inoperable which delayed dispensing till each morning. The discipline was pretextual as management had informed the Plaintiff that getting out cash tills was not part of the morning Time Management. The discipline also stated that the Plaintiff had missed the Loomis Bank Deposit. However, the Plaintiff could not have performed this action due to the fact that the Sam's club cash recycler (which is required to be used) was inoperable. Therefore, all aspects of the discipline were pretextual and only meant to harass and cause a hostile work environment for the Plaintiff. In April of 2023, another younger male employee failed to make the Loomis Bank Deposit and was not disciplined. The Plaintiff witnessed the large cash deposit sitting in the office due This employee missing the Loomis cash deposit.

46. In January of 2023, the Plaintiff began to suffer sexual harassment from another female employee. The employee subjected the Plaintiff to constant inappropriate and unprofessional names on the sales floor in front of customers and employees. The Plaintiff reported the actions to management. The Plaintiff informed management that it was embarrassing, uncomfortable and inappropriate in a professional environment. As a result of the Plaintiff's complaints, Mead informed the Plaintiff that she was required to call the individual in the office and talk it out.

47. The Plaintiff reported the incidents to the Club Manager. In addition, the Plaintiff reported a co-worker's inappropriate coffee cup that had an offensive message. The Club manager refused to handle either situation.

10

48. On January 20, 2023, the Plaintiff contacted Open Door & Ethics in reference to this discriminating treatment.

49. On February 6, 2023, the Plaintiff received a discipline for the month of January. Bruggeman lied on the document stating that Marlyn Edwards was present when it was her. Bruggeman and Meade intentionally falsified this document in order to make it appear that the Plaintiff was being disciplined by others and not just them. The Disciplinary Action, DA3-Red, stated the Plaintiff was terminated. Management's actions were in violation of policy, unfair and inconsistent. The Defendants constantly preached to management that they were required to be fair and consistent. However, the Plaintiff's management were constantly unfair and applied discipline inconsistently to perpetrate their pattern of discrimination against older individuals.

50. In January 2023 and February 2023, the Plaintiff notified Corporate Home Office of the harassment and mistreatment that she was receiving. The Plaintiff also informed the Home Office that she was not being provided any Feedback documentation regarding her performance in violation of the policy.

51. On March 3, 2023, Meade requested a picture of the Plaintiff.

52. On March 14, 2023, the Plaintiff presented several requests for time off in June and August. The dates were denied due to insufficient balance of PTO (which was untrue as the Plaintiff had sufficient PTO). Another younger manager requested the same dates off and those were approved even though she did not have PTO.

53. On March 16, 2023, Meade sent an email to front end team leads & front-end managers informing them the expectations were that they were to provide feedbacks to associates to

correct behavior and then a coaching as the proper procedure.  The Plaintiff was treated differently and was not provided feedbacks but went straight to coaching and termination.

54. On March 22, 2023, the Plaintiff contacted Workers' compensation for the Defendants seeking an authorization to see the orthopedic physician regarding the pay in her wrist, elbow, arm and shoulder where she fell on her left side.  There was no response.

55. On March 27, 2023, the Plaintiff complained regarding the failure the of the Defendants to provide proper treatment for her injuries received in the accident.  The Plaintiff was attempting to seek further treatment for the pain she was suffering.  The Plaintiff was required to constantly seek the treatment as the Defendants failed and refused to approve treatment.

56. The Plaintiff's first disciplinary action from May of 2022 expired on May 11, 2023.

57. On May 11, 2023, the Plaintiff was aware that her last write up dropped off her file.  The Plaintiff applied for a position as a Sam's Club Team Manager.  The Defendants interviewed several others but failed and refused to interview the Plaintiff. The difference was that the Plaintiff was the only older individual.  The job was given to a less qualified younger individual.

58. On May 17, 2023, the Plaintiff was diagnosed with COVID and required to take a Leave of Absence.

59. On May 22, 2023, a less qualified male was hired for the Sam's club Team Manager position.

60. On May 26, 2023, Meade instructed the Plaintiff to write up Alyssa Grynsky, the individual who the Plaintiff had reported for sexual harassment.  The Plaintiff did as instructed and wrote up Grynsky for not being on task.  On several occasions Grynsky would be off task

resting rather than performing the requirements of her position. After the write up was issued, Grynsky complained to Meade. Meade then instructed Grynsky to report the Plaintiff to corporate. After the report to Corporate, Meade used this information to terminate the Plaintiff on the 8th of June.

61. On June 1, 2023, the Plaintiff sent an email to the Defendants regarding her still suffering severe pain from her fall, needing an appointment ASAP, the unwarranted delays, and her overall disappointment in the process.

62. On June 7, 2023, the Plaintiff was having problems receiving the proper treatment for her elbow and shoulder. The Plaintiff sent an email demanding medical treatment for her pain. The Defendants were failing and refusing to approve an x-ray for her shoulder and elbow.

63. The Plaintiff was terminated on June 8, 2023. At the time of termination, the Plaintiff had not received three Disciplinary actions as required by the policy. The Plaintiff only had 1 outstanding disciplinary action. Other younger individuals who had not filed a workers compensation action and were not perceived as disabled were not terminated after receiving three disciplinary actions. The Plaintiff was terminated for pretextual reasons and in violation of the Defendants own policies.

64. The reason for termination provided to the Plaintiff was "respect for the individual."

65. The Plaintiff was replaced with a younger non-disabled individual.

66. On June 8, 2023, the Plaintiff received a handwritten check as her last paycheck without the proper documentation. The Plaintiff was also locked out of the payroll system to see what the paycheck was for and why.

67. That each of the actions taken by the Defendants against the Plaintiff during her employment led the Plaintiff to fear for her position and feel harassed based on her age as Bruggeman did not treat any younger employees in such a manner.

68. At the time of the Plaintiff's termination there were no Feedbacks/Warnings in her employee file. The Plaintiff was not given the benefit of this policy, was treated differently and terminated without any Feedback in her file.

69. The Plaintiff applied for unemployment benefits through the South Carolina Department of Employment and Workforce after her termination. The Plaintiff was required to appeal the determination. The Plaintiff received benefits from the Appeal Tribunal on July 21, 2023, without disqualification. It was determined that the Plaintiff was discharged without cause.

70. After her termination the Plaintiff contacted Open Door & Ethics again and filed a complaint. The Plaintiff contacted them several times over the months of June and July with the proper information regarding the discrimination, harassment, and wrongful termination. The complaint was closed in September of 2023 without an investigation

71. That the Plaintiff was treated rudely, unprofessionally, harassed and abused by Management.

72. That the Defendants directly violated its own policies regarding the Plaintiff by failing to protect the Plaintiff from discrimination and a hostile work environment.

73. That the Defendants treated the Plaintiff disparately differently than it treated similarly situated employees.

74. That each of the Defendants' actions were based on consideration of the Plaintiff's Age, Disability and National Origin, the Defendant violated the ADEA, ADA and Title VII.

14

75. That the Defendants unlawfully discriminated against the Plaintiff because of her age, disability and national origin.

76. That as a direct result of the Defendants' violation of the Title VII the Plaintiff has suffered:

        a.      Economic Damages;

        b.      Economic Benefit Damages;

        c.      Anxiety humiliation and emotional damages.

77. That the Plaintiff is entitled to recover damages from the Defendants in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to the Title VII, ADEA, and the ADA.

78. That the Defendants took adverse employment action against the Plaintiff by:

        a.      Failing and refusing to protect her from discrimination;

        b.      Subjecting the Plaintiff to continuing harassment and hostile work environment; and

        c.      Discharging her from her employment.

79. That the Defendants created a hostile work environment because the Plaintiff was protected by ADA and Title VII based on her sex and perceived disability.

80. That as a direct, proximate result of the actions of the Defendants, the Plaintiff is entitled to actual, consequential, punitive damages, attorney's fees and costs, costs associated with this litigation and any other damages as this Honorable Court sees fit.

## FOR A FIRST CAUSE OF ACTION

## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

## BASED ON SEX IN VIOLATION OF TITLE VII

15

81. Paragraphs one (1) through eighty(80) are hereby incorporated verbatim.

82. That the Plaintiff was an employee of the Defendant.

83. That the Defendant was an employers in accordance with Title VII.

84. That the Plaintiff was treated differently based on her Sex.

85. That the Plaintiff was subjected to harassment and discrimination based on her Sex. The Defendants treated the Plaintiff differently than her counterparts by subjecting her to commentary, failing to promote her, and subjecting her to hostilities.

86. The Plaintiff was subjected to inappropriate commentary that amounted to sexual harassment.

87. That the Defendants failed and refused to correct the situation when the Plaintiff complained about sexual harassment.

88. That the Defendants subjected the Plaintiff to harassment and hostile work envrionment based on her Sex.

89. That the Plaintiff applied for a promotion to Team Manager.

90. That the Plaintiff was not hired for the position.

91. That a less qualified male employee was hired for the position.

92. That the Plaintiff was treated differently based on her Sex whereas others were not treated as severely that were not in her protected class.

93. That the Plaintiff was subjected to daily commentary and a refusal of the Defendants to fix the situation.

94. That the Plaintiff was discriminated against based on her sex when she was subjected to sexual harassment, sexual innuendo, and failure to promote.

16

95.     That the Plaintiff reported the actions of management in her Club to her employer/Corporate which led to a work environment that was more abusive, to the point of severe and pervasive.

96.     That the Plaintiff suffered severe emotional distress as a result of the Defendants' hostile work environment based on the Plaintiff's Sex and complaints regarding the work environment.

97.     That the Plaintiff was subjected to differential treatment based on her Sex in Violation of Title VII.

98.     That the Plaintiff has been damaged significantly as a result of the Defendants' work environment.

99.     That the Defendants are the direct and proximate cause of damage to the Plaintiff.

100.    That the Plaintiff is entitled to actual, compensatory, consequential and punitive damages from the Defendants as a result of the Discrimination she received based on her Sex.

## FOR A SECOND CAUSE OF ACTION

## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE

## AMERICANS WITH DISABILITIES ACT

101.    That Paragraphs one(1) through one hundred (100) are hereby incorporated verbatim.

102.    The Defendants are employers as defined in ADA.

103.    That the Plaintiff is an employee as defined by the ADA.

104.    That the Plaintiff was considered an exemplary employee.

105.    That while she has been employed with the Defendants, the Plaintiff has been able and has performed her job duties in a satisfactorily level of the Defendants.

17

106.   That the Plaintiff suffered an on the job injury.  That the on the job injury required the Plaintiff to demand treatment from the Defendants.  That the Plaintiff was subjected to severe emotional distress as a result of the Defendants failure to properly treat the Plaintiff's on the job injury.

107.   That the Plaintiff was subjected to commentary regarding her perceived disability based on the on-the-job injury.

108.   That the Defendants considered the Plaintiff's disability or perceived disability when considering any and all employment decisions.

109.   That the Defendants failed and refused to accommodate her conditions.  Further failed and refused provide her promotions, uniforms, and training due to her actual disability.

110.   That the Defendants violated its own policies and procedures when it allowed employees to harass the Plaintiff based on a perceived disability.

111.   That the Plaintiff suffered from mobility issues during her employment as a result of the injury.  As a result of that perceived disability the Defendants' employees harassed the Plaintiff, made substantial negative commentary and bullied the Plaintiff.

112.   That the Defendants failed and refused to stop the harassment.

113.   That the Defendants discriminated against the Plaintiff based on her disability, record of disability, and or perceived disability.

114.   That the work environment was hostile as a result of the Defendants' employees being permitted to harass the Plaintiff.  That the work environment was severe and pervasive as set forth above.

115.   That the Defendants are the proximate and direct cause of damage to the Plaintiff.

116.   That the Plaintiff has suffered severe emotional damages as a result of the Defendant's discrimination against the Plaintiff.

117.   That the Plaintiff was subjected to discrimiantion based on consideration of her disability, the Defendantss perception of the Plaintiff's disability, or in consideration of the Plaintiff's disability, the Defendants violated the ADA.

118.   That as a direct result of the Defendants' violation of ADA the Plaintiff has suffered:

    a.      Lost wages and lost benefits;

    b.      Future lost wages and Benefits;

    c.      Economic damages;

    d.      Economic hardship;

    e.      Lost wages;

    f.      Suffered anxiety, humiliation and emotional damages.

119.   That the Plaintiff is entitled to recover damages from the Defendants in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to the ADA for the Defendants' discrimination against the Plaintiff based on her disability.

## FOR A THIRD CAUSE OF ACTION

## RETALIATION IN VIOLATION OF TITLE VII, ADEA, AND ADA

120.   Paragraphs one (1) through one hundred and nineteen (119) are hereby incorporated verbatim.

121.   That the Plaintiff participated in a protected act when she reported discrimination, hostile work enviornment, and retaliation.

122. That the Plaintiff was retaliated against for reported discrimination, retalition, and hostile work environment.

123. That the Defendants took adverse employment action against the Plaintiff because she had engaged in actions protected by Title VII when she complained of sexual harassment, sex discrimination, age discrimination, disability discrimination and being subjected to retaliation through the disciplinary process.

124. That the Defendant treated the Plaintiff differently regarding the terms and conditions she reported discriminatory actions. The Plaintiff suffered retaliation for her complaints regarding discrimination.

125. That ultimately the Defendants disciplined and terminated the Plaintiff for pretextual reasons.

126. That the termination of the Plaintiff was pretextual.

127. That, as a direct and proximate result of the Defendants' intentional unlawful and retaliatory actions, the Plaintiff:

      i. suffered severe emotional distress;

      ii. suffered future lost wages and future lost benefits;

      iii. suffered economic damages;

      iv. Loss of employment;

      v. Loss of Future employment;

      vi. incurred attorney fees for this action;

      vii. incurred costs of this action; and

      viii. will incur future attorney fees and costs.

128.   That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

## FOR A FOURTH CAUSE OF ACTION

## AGE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

## IN VIOLATION OF THE ADEA

129.   Paragraphs one (1) through one hundred and twenty-eight (128) are hereby incorporated verbatim.

130.   That the Plaintiff is an employee as defined by the ADEA.

131.   The Defendants are an employer as defined by the ADEA.

132.   That the Plaintiff was subjected Age Discrimination while employed with the Defendants.

133.   That the Defendants treated the Plaintiff significantly differently based on her age.

134.   That the Defendants, treated the Plaintiff sifnificantly different than it treated younger employees.  That the Defendants did not discipline younger employees for actions that would have been terminable offesnses.  That the Defendants treated younger employees more favorably with bigger raises, better evaluations and no discipline.

135.   That the Defendants accommodated younger less qualified individuals, promoted younger less qualified male employees, failed to discpline younger individuals, failed to discipline male employees and failed and refused to protect the Plaintiff from discrimination.

136.   That the Plaintiff was denied promotions where younger less qualified male employees were promoted into positions that the Plaintiff applied for.

21

137.  That the work environment was severe and pervasive subjecting the Plaintiff to daily harassment regarding her age and the failure to the Defendants to instruct employees to not treat employees discriminatorily.

138.  That the Plaintiff was treated differently based on her age.

139.  That the Defendants' treatment of the Plaintiff was so hostile the Plaintiff was subjected to severe emotional distress.   That the Plaintiff was wrongfully terminated from her employment with the Defendants.

140.  The Defendants constantly threatened the Plaintiff with significant discipline in retaliation for her complaints regarding discrimination based on disability, age and National Origin.

141.  That the Defendants' actions towards the Plaintiff violated the law.

142.  That the Defendants are the direct and proximate cause of damage to the Plaintiff.

143.  That, as a direct and proximate result of the Defendants' intentional unlawful actions towards the Plaintiff based on the Plaintiff's age, the Plaintiff:

　　　a.  suffered severe emotional distress;

　　　b.  suffered future lost wages and future lost benefits;

　　　c.  suffered economic damages;

　　　d.  Loss of employment;

　　　e.  Loss of Future employment;

　　　f.  incurred attorney fees for this action;

　　　g.  incurred costs of this action; and

　　　h.  will incur future attorney fees and costs.

144.  That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous,

future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

## FOR A FIFTH CAUSE OF ACTION

## NEGLIGENT SUPERVISION OF AN EMPLOYEE

145. Paragraphs one (1) through one hundred and forty-four (144) are hereby incorporated verbatim.

146. That the Defendants negligently supervised its employees, Bruggeman and Meade.

147. The Defendants were fully aware of the actions of its employees. That the Defendants had received complaints regarding these employees and failed and refused to discipline them for their actions.

148. That the Defendants owed the Plaintiff a duty to protect the Plaintiff from the wrongful acts of its employees.

149. The Defendants failed and refused to protect the Plaintiff and allowed employees to harass, intimidate, bully and inflict emotional distress on Plaintiff without justification.

150. At all times the Plaintiff was an exemplary employee.

151. That the Defendants breached the duty it owed to the Plaintiff by not properly supervising its employees.

152. That the negligent supervision of these employees caused the Plaintiff significant damages.

153. That the Defendants are the proximate and direct cause of damages to the Plaintiff.

154. That the Plaintiff is entitled to an award of damages from the Defendant for their negligent supervision of their employees in the amount of actual, compensatory, and punitive damages.

**WHEREFORE**, the Plaintiff respectfully requests the following relief:

Entry of judgment in favor of the Plaintiff and against Defendants;

1.    Economic Damages;

2.    Future Economic damages;

3.    Lost Wages;

4.    Future Lost Wages;

5.    Lost Benefits;

6.    Future Lost Benefits;

7.    Compensatory and consequential damages;

8.    All damages available pursuant to Title VII;

9.    All damages available pursuant to the ADEA;

10.    All damages available pursuant to the ADA;

11.    Attorneys fees and costs; and

12.    Other such relief as may be appropriate to effectuate the purposes of South Carolina Law;

13.    All other damages as are available under Federal Law; and

14.    All other damages as this Honorable court sees fit.

                                        Hunt Law LLC

                                        *s/Bonnie Travaglio Hunt*
                                        Bonnie Travaglio Hunt
                                        ATTORNEY FOR THE PLAINTIFF
                                        Post Office Box 1845
                                        Goose Creek, SC 29445
                                        (843)553-8709
                                        bthunt@huntlawllc.com

Date:  October 8, 2025